# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE R. FONTAINE, JR., | No. 2:12-cv-2662-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 20). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on July 21, 2009 (Title II application) and July 30, 2009 (Title XVI application), alleging an amended onset of disability on October 9, 2008, due to disabilities including schizophrenia bipolar mania disorder and lumbar herniated disc (Certified administrative record ("CAR") 65-68, 109-12, 140-44, 173-74). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on February 18, 2011, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In an April 6, 2011, decision, the ALJ concluded that plaintiff is not disabled[2] based on

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 9, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple unskilled light work as defined in 20 CFR 404.1567(b) that does not involve frequent public contact.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 27, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a 9th grade limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the

---

process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

Social Security Act, from October 9, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(CAR 10-20). After the Appeals Council declined review on August 28, 2012, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways:  (1) the ALJ erred in his treatment of the medical opinion evidence; and (2) the ALJ rejected both plaintiff's testimony and his third party witness statements without articulating legitimate reasons for so doing.

### A.   MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

1 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining
2 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,
3 without other evidence, is insufficient to reject the opinion of a treating or examining
4 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any
5 conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,
6 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);
7 see also Magallanes, 881 F.2d at 751.

    Plaintiff contends the ALJ failed to accurately characterize the medical opinion evidence, failed to credit the medical opinions he purported to accord significant weight, and failed to properly evaluate and credit plaintiff's treating physician's opinion.  Plaintiff argues the ALJ ignored most of his medical records, citing to references in his medical records occurring before his amended onset date, and isolating only those supporting his decision not considering the entirety of the records. In addition, plaintiff argues the ALJ accorded the consulting physician's opinion significant weight, but failed to include all of the limitations Dr. Cheema opined into the residual functional capacity assessment.  Finally, plaintiff argues the appeals council erroneously rejected plaintiff's treating psychiatrist's opinion, which was submitted to the appeals council after the ALJ's decision, without providing any reasons for so doing.

    Medical records

    Plaintiff first argues the ALJ ignored most of his medical history with Kaiser, citing only to assessments made prior to his alleged onset date, and only those favorable to his opinion.  As to his history with Kaiser, the ALJ stated:

> The claimant reports daily low back pain that radiates down his legs.  In April 2007, an MRI scan of the lumbar spine showed no significant change in appearance since an earlier study in March 2004.  There was a small left paracentral disc protrusion at L4-5. Mild spondylotic changes were also noted at this level and moderate spondylotic changes at L5-S1, but no significant central stenosis was seen with only some stenosis on the left.  The claimant treated with Morphine, Norco and Soma that provided some pain control.  The claimant remained independent in

1 activities of daily living and walked without an assistive device (Ex. 8F).

Kaiser practitioners found claimant's condition stable in July 2008. He reported that his relationship was strained and that he had been self-medicating with alcohol. Several months later, the claimant took four Soma along with alcohol following a day of drinking and fighting with his partner. He returned to Kaiser, but breathing was spontaneous and unlabored. In a couple of other instances, the claimant mixed his medication with alcohol, but was sent home from Kaiser as stable (Ex. 7F).

The claimant fell in June 2009, but discomfort was localized to the low back. There were no paresthesias, coordination deficit, bowel/bladder dysfunction or evidence of spinal cord compromise. The claimant had no concern that recent symptomatology represented a new or a different process. Neurological examination was grossly normal. All extremities were moved with normal strength, tone and coordination. An MRI in November 2009 revealed degenerative disc disease at L4-5 and L5-S1, but no significant spinal canal narrowing. Left neural foraminal narrowing was unchanged compared to 2007 (Ex. 7F & 8F).

Plaintiff also reported emotional difficulties to his treating practitioners at Kaiser Permanente in March 2008. He noted anxiety, excessive worry and racing thoughts. A Global Assessment of Functioning (GAF) score of 61-70 was established. Such a score is indicative of an individual who has some mild symptoms, but who generally functions pretty well and who has some meaningful interpersonal relationships. The claimant reported that he feels much better when he is compliant with established mediation regimens and does not center on his past (Ex. 1F). The calamint reported in February 2009 that he occasionally works at his aunt's ranch and in September 2009 that he cleans the house (Ex. 7F).

(CAR 16).

The undersigned notes that plaintiff is correct in that the ALJ's review of the medical records were largely prior to his amended alleged onset date. However, a review of the medical records indicates that plaintiff's condition did not deteriorate significantly from those noted by the ALJ. Indeed, a majority of the medical records indicate plaintiff responded fairly well to his medication when he was compliant. (See e.g., CAR 325). As the defense points out, a majority of the psychiatric medical records from Kaiser were from plaintiff's visits with a social worker, not a psychiatrist. Regardless, as plaintiff notes, the social worker did assess a GAF of

7

51-60, but also indicated a mostly normal mental status.  And by 2010, plaintiff showed overall stability, and stability for over a year.  (CAR 896).  In addition, plaintiff had a history of overusing his pain medication, which the ALJ also did not mention, but is noteworthy.  (See e.g., CAR 359, 376, 401).  Overall, the undersigned finds no error in the ALJ's treatment of the medical records from Kaiser.  There are no treating physician opinions in the record, just treatment notes.  From those treatment notes, the ALJ and reviewing state agency physicians determined plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and interact with the general public.  (CAR 288-90).  The ALJ did not reject the treatment records, and the overview provided, while encompassing some time prior to the amended onset date, also included records from 2009 which was after the alleged onset date.  The records from 2009-2010 do not differ significantly from those summarized by the ALJ.

### Consultative Examiner Dr. Cheema

Next plaintiff argues that the ALJ accepted Dr. Cheema's opinion, giving it significant weight, but failed to adopt all of the limitations set forth therein.  As to Dr. Cheema's opinion, the ALJ stated:

> Pavitar Cheema, M.D. conducted a psychiatric evaluation in October 2009.  Dr. Cheema reported a history of depression and mood irritability since the later teen years and more recent feelings of helplessness, headaches, worry, sleep disturbance, fatigue, and a low energy level.  Suicidal thoughts had been absent for 20 years.  There was no history of suicidal attempts or hospitalization for such, elated or grandiose mood, inflated self-esteem, racing thoughts, elevated mood, paranoia, delusional thoughts or any kind of hallucination.  The claimant takes care of routine chores for himself.  Although treatment had been on and off though the years, the claimant had responded well to medication.  Upon examination, psychomotor activity was normal and speech was well organized.  Affect was appropriate to content of thought.  Thinking was clear.  There was no paranoia, grandiose ideation, suicidal/homicidal ideation, or delusional thought.  The claimant was not responding to internal stimuli and was alert and oriented to time, place and person.  Dr. Cheema assessed that the claimant is able to remember, understand and carry out simple job instructions; perform simple repetitive tasks; and handle funds.  He opined

8

>moderate difficulty and stress related to work; with maintaining attention, concentration and persistent pace; with remembering, understanding, and carrying out complex job instructions; and with interacting with the public, co-workers and supervisors.  Dr. Cheema noted that attendance and punctuality on the job could be unpredictable, but he found a fair prognosis with ongoing psychiatric intervention.  A GAF score of 65 was established which is similar to scores found by practitioners at Kaiser Permanente and noting only mild limitations (Ex. 2F).  The Agency definition of a moderate impairment is that there is more than a slight limitation in an area, but such an individual is still able to function satisfactorily.  The undersigned finds the opinion of Dr. Cheema persuasive, compatible with the aforementioned definition, consistent with the record and well-supported by objective findings and, therefore, accords it significant weight.

(CAR 16-17).

In addition to discussing Dr. Cheema's opinion, the ALJ also discussed the state agency consultant opinions in the record, including Dr. Jaituni, who opined as to plaintiff's physical limitations, and Dr. Paxton, who opined as to plaintiff's mental limitations.  As to plaintiff's mental impairments, the ALJ stated:

>. . . R. Paxton, M.D. concluded that the claimant experiences moderate limitations in the ability to understand, remember and carry out detailed instructions and interact appropriately with the general public (Ex. 4F).  The Administrative Law Judge notes that, although these are non-examining physicians under Social Security Ruling 96-6p, their opinions are entitled to consideration in conjunction with all of the other evidence.  The State Agency consultants' opinions, as they pertain to the claimant's impairments, show consistency with the record and are thus found persuasive by the undersigned.
>
>The substantial evidence of record, as noted above, confirms that the claimant continues to have problems with back pain and depression.  Despite these conditions, opinions of examining and non-examining practitioners support the findings regarding the claimant's ability to perform work-related activities.  Even with the limitations that the claimant's conditions impose, the record supports that the claimant has the ability to perform a significant range of light work that involves simple unskilled tasks and infrequent public contact.  This contention is supported by objective findings and medical source statements contained in the record.

(CAR 17).

///

Plaintiff argues the ALJ accepted Dr. Cheema's opinion, but ignored some of the limitations set forth therein without providing reason for so doing. Plaintiff's argument fails to consider the ALJ's review of Dr. Paxton's opinion. Plaintiff later argues the ALJ erred in accepting Dr. Paxton's opinion over a treating physician, Dr. McAndrew, that argument is addressed below. Plaintiff does not argue the ALJ erred in accepting the limitations set forth in Dr. Paxton's opinion in conjunction with those in Dr. Cheema's opinion. In reviewing the ALJ's decision, the undersigned finds the limitations Dr. Cheema set forth are adequately accepted, as supplemented by Dr. Paxton's opinion. Indeed, Dr. Paxton opined plaintiff had no significant limitations in his ability to maintain regular attendance and complete a normal work week. The ALJ found Dr. Paxton's opinion supported by objective findings and medical source statements in the record, and consistent with the record.

Contrary to plaintiff's argument, the ALJ weighed the medical opinions, discussed them, and articulated a legitimate reason for finding the limitations as set forth in the opinion. While the evidence may be subject to alternate interpretations, the court may not simply substitute it's own opinion. The ALJ's interpretation of the evidence is not erroneous, is supported by the record, and therefore must be affirmed. See Thomas, 278 F.3d at 954. The court finds no reversible error in the treatment of Dr. Cheema's opinion in the ALJ's decision.

Treating psychiatrist Dr. McAndrew

Finally, plaintiff contends the Appeals Council, not the ALJ, erred in failing to accept Dr. McAndrew's opinion, which was submitted on appeal of the ALJ's determination. Plaintiff argues it was erroneous to accept Dr. Paxton's opinion over his treating physician without providing any reasons for rejecting the new evidence. Plaintiff's contention is based on the treating physician rule, that the treating physician's opinion is entitled greater weight that other physicians, and rejecting that opinion without reason is reversible error.

/ / /

/ / /

Plaintiff began treatment with Dr. McAndrew on March 21, 2011, a month after the administrative hearing and a month before the ALJ issued his opinion. On May 24, 2011, Dr. McAndrew completed a medical assessment of ability to do work-related activities (mental), wherein he determined plaintiff was quite limited in his abilities. Dr. McAndrew opined plaintiff had poor or no ability to deal with the public, use judgement, interact with supervisors, deal with work stress, function independently, maintain attention/concentration, understand detailed and/or complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and would be inconsistent and sporadic in his attendance. (CAR 907-10). On September 1, 2011, Dr. McAndrew authored a written opinion as to his observations during his psychiatric sessions with plaintiff. Dr. McAndrew opined that plaintiff:

> would not be ale to meet the expected attendance, dress, motivational, and social requirements of employment of any kind requiring him to leave his home, and I would expect this disability to continue for an extended period. This opinion is based on his diagnosis (Schizoaffective Disorder), history since age 19, mental status in the office, and observations at his appointments over the period since 3-21-2011.

(CAR 919).

Dr. McAndrew's opinion was not submitted until after the ALJ issued his opinion. It was submitted to the Appeals Council as new evidence. As it is now part of the administrative record, the court must consider on review. See Brewes v. Commissioner, 682 F.3d 1157, 1163 (9th Cir. 2012). In so doing, the court must assess the record as a whole and determine whether the ALJ's decision is supported by substantial evidence. See id. At 1161-62.

Considering the additional evidence from Dr. McAndrew, the undersigned finds that substantial evidence supports the ALJ's conclusion. Plaintiff is correct that a treating physician's opinion is generally given more weight. As set forth above, this is because a treating physician generally has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). However, an ALJ may reject a treating physician's opinion providing sufficient

reasons are given, and may resolve a conflict in opinions between physicians.

Here, the ALJ was not provided an opportunity to resolve the conflict, to the extent there is one, between the medical opinions. However, at the time Dr. McAndrew submitted his review, he had only had the opportunity to meet with plaintiff three times. This is not the long term relationship where the treating physician has had a greater opportunity to know and observe the plaintiff as an individual. Therefore, even if Dr. McAndrew's opinion had been before the ALJ, as a conflicting opinion the ALJ would have been able to resolve that conflict and there is substantial evidence in the record to support the ALJ's determination as set forth in his opinion. There are no additional limitations included in Dr. McAndrew's opinion or treatment notes, and Dr. McAndrew's opinion as to plaintiff's limitations is based on a limited amount of visits over a limited amount of time. In addition, there is some conflict between Dr. McAndrew's treatment notes, which indicates plaintiff was responding well to medication and was doing well overall, and his opinion that plaintiff was almost completely unable to function. The court finds that even in light of Dr. McAndrew's opinion, substantial evidence supports the ALJ's conclusions.

### B.   CREDIBILITY

Finally, plaintiff contends that the ALJ's credibility determination was erroneous. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155,

1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

As to plaintiff's credibility, after reviewing the plaintiff's testimony and statements, the ALJ found:

> The claimant alleges debilitation due to a herniated disc in the back, schizophrenia and bipolar/mania disorder.  The medical evidence shows the claimant has some problems with his back and with leg weakness that limits his activities a bit; however, he is still able to get around effectively and care for his own needs.  He walks daily for exercise.  Radiological studies have been largely unremarkable.  At times, the claimant has put forth a limited effort upon examination.  Surgery has not been suggested and conservative treatment modalities have been generally helpful in alleviating pain levels.  The claimant sees to his personal needs, performs a variety of household chores, cares for his pets, shops and keeps in touch with others.  As to any mental health problems, there is note that the claimant does get depressed at times and that such symptoms can be overwhelming.  However, he is still very well able to think, communicate, and act in his own interests and make his needs known.  There is little documentation of specific manic episodes or frequent and specific examples of hallucinations.  Although he does not feel comfortable with crowds, the claimant does have several friends and lives with his partner.  He watches TV and uses the computer to keep in touch with the outside world.

(CAR 15-16).

Contrary to plaintiff's argument, the ALJ's reasons were more than discrediting the alleged degree of plaintiff's symptoms based on the medical evidence.  The ALJ gave several reasons for discrediting plaintiff, including plaintiff's limited medical evidence supporting such limitations, his daily activities, limited effort on examination, and conservative treatment.  The undersigned finds these reasons sufficiently clear and convincing, and supported by the record.  Although plaintiff's assertion is correct, that the ALJ did not make a specific finding of malingering, the ALJ did find that plaintiff's treating providers noted his lack of effort on examination and suggestion that plaintiff's leg complaints were not as severe as he indicated.  (See CAR 580-600).  Plaintiff is also correct that a claimant need not be completely unable to care for himself before finding him disabled.  However, as the defense argues, a finding that the daily activities are inconsistent with the severe limitations plaintiff alleges can be used in a credibility determination.  Here, the ALJ did not determine plaintiff capable of full time work

14

based on his daily activities.  Rather, the ALJ found plaintiff's daily activities were inconsistent with the severity of limitations he alleges, thus bringing his credibility into question.  The undersigned finds the credibility determination is supported by the record as a whole.

Finally, plaintiff argues the ALJ erred in not specifically addressing Jeremy Cavazos's sworn statement, and rejecting his partner's reports for the same reasons plaintiff's statements were rejected.  The ALJ did not ignore plaintiff's partner's statements completely.  Rather, he summarized the statements made in the reports.  The summarization does not go into as much detail as the sworn statement Mr. Cavazos submitted, but the information provided in Mr. Cavazos' sworn statement is not contrary to the ALJ's summary.

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ did not ignore Mr. Cavozos' statements, but rejected them for the same reasons he rejected plaintiff's.  As the reasons for rejecting plaintiff's testimony were sufficient, it follows that the rejection of Mr. Cavozos' statements is also sufficient.  An ALJ does not err in rejecting a lay witness' statements for the same reasons the claimant's statements were rejected where the statements are similar.  The undersigned finds no reversible error.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

        1.    Plaintiff's motion for summary judgment (Doc. 13) is denied;

        2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

        3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 26, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE